NANCY E HAMMOND, REGISTER OF DEEDS
E-RECORDED   Bk 19510  PG 428
Instr # 2024030361
09/12/2024  10:55:05 AM
Pages 7      YORK CO

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

_____[Space Above This Line For Recording Data]_____

Loan No.:
Investor Loan No.:

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 14th day of June, 2024, between GERALD C PETTIT AND JENNIFER L PETTIT, AS JOINT TENANTS, whose address is 117 BADGER CIR, LIMERICK, Maine 04048 ("Borrower/Grantor") and U.S. Bank Trust National Association, not in its individual capacity but solely as trustee for Legacy Mortgage Asset Trust 2021-GS5 by Fay Servicing, LLC as Attorney in Fact, whose address is 5426 Bay Center Drive, Suite 300, Tamp, Florida 33609 ("Lender/Grantee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated November 29th, 2006, recorded December 18th, 2006, and recorded in Book/Liber 15038, Page 0596, Instrument No. 2006069779, of the Official Records of YORK County, Maine, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at 117 BADGER CIR, LIMERICK, Maine 04048,

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

MAINE LOAN MODIFICATION AGREEMENT                                                    Page 1 of 6



Loan No.:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

    1.    As of July 1st, 2024, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $98,303.50 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

    2.    $3,022.91 of the New Principal Balance shall be deferred ("the Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $95,280.59. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 4.000%, from June 1st, 2024. Borrower promises to make monthly payments of principal and interest of U.S. $454.88, beginning on the 1st day of July, 2024, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 4.000% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be June 1st, 2054.

    3.    Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

    4.    If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

    5.    If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

    6.    Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

    (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

Loan No.:

7. Borrower understands and agrees that:
(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.
(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.
(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.
(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.
(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.
Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.
By checking this box, Borrower also consents to being contacted by text messaging☐.
8. If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.
9. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph.

Loan No.:

     Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

     Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

     The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

     If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Loan No.:

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

_6/28/2024_ _(mp)_      _Jennifer L Pettit_ _____(Seal)
Date                         JENNIFER L PETTIT     –Borrower

_6/28/2024_             _Gerald C Pettit_ _____(Seal)
Date                         GERALD C PETTIT     –Borrower

_____      _____(Seal)
Date                                                   –Borrower

_____      _____(Seal)
Date                                                   –Borrower

## BORROWER ACKNOWLEDGMENT

State of _Maine_ §
County of _Cumberland_ §

On this _28th_ day of _June_, _2024_, before me, _____ [name of notary], a Notary Public in and for said state, personally appeared JENNIFER L PETTIT and GERALD C PETTIT

[name of person acknowledged], known to me to be the person who executed the within instrument, and acknowledged to me that he/she/they executed the same for the purpose therein stated.

_Kirsten Komulainen_ (signature)
Notary Signature
_Kirsten Komulainen_
Type or Print Name of Notary

Notary Public, State of _Maine_

My Commission Expires:

```
KIRSTEN KOMULAINEN
Notary Public - Maine
My Commission Expires May 30, 2026
```

Loan No.:

Fay Servicing, LLC as Attorney in Fact
for U.S. Bank Trust National —Lender
Association, not in its individual
capacity but solely as trustee for Legacy
Mortgage Asset Trust 2021-GS5

8/15/24
-Date

By: _____ Lorrie Means

Its: **AVP, Loss Mitigation**

## LENDER ACKNOWLEDGMENT

State of **Texas** §
County of **Dallas** §

On this ___ day of **August 15th**, **2024**, before me, _____ [name of notary], a Notary Public in and for said state, personally appeared **Lorrie Means**, **AVP, Loss Mitigation** [name of officer or agent, title of officer or agent] of Fay Servicing, LLC as Attorney in Fact for U.S. Bank Trust National Association, not in its individual capacity but solely as trustee for Legacy Mortgage Asset Trust 2021-GS5

, [name of entity] known to me to be the person who executed the within instrument on behalf of said entity, and acknowledged to me that he/she/they executed the same for the purpose therein stated.

_____
Notary Signature   Irma C Venegas

IRMA C. VENEGAS
My Notary ID # 130670665
Expires May 26, 2027

Type or Print Name of Notary

Notary Public, State of **Texas**
My Commission Expires: May 26, 2027

## EXHIBIT "A"

Two tracts or parcels of land, with any buildings thereon, situated in the Town of Limerick, County of York, and State of Maine, being more particularly bounded and described as follows:

Tract I:

A certain lot or parcel of land, together with the buildings and improvements thereon, situated in the Town of Limerick, County of York and State of Maine, being Lot No. B58, on Sheet 3 of Plan of Section 9 of Lake Arrowhead Estates, prepared by Wright, Pierce, Barnes & Wyman, Engineers, Topsham, Maine and recorded in the York County Registry of Deeds in Plan Book 54, Page 23.

Tract II:

A certain lot or parcel of land, together with the buildings and improvements thereon, situated in the Town of Limerick, County of York and State of Maine, being Lot No. B59, on Sheet 3 of Plan of Section 9 of Lake Arrowhead Estates, prepared by Wright, Pierce, Barnes & Wyman, Engineers, Topsham, Maine and recorded in the York County Registry of Deeds in Plan Book 54, Page 23.

Meaning and intending to convey and hereby conveying the same premises described in a deed from June M. Woodman and Robert P. Woodman dated November 23, 1998 to Craig A. Forbes and recorded in the York County Registry of Deeds in Book 9289, Page 236.

APN: 39-126